Our last case today is number 19-14324, Laura Goodloe v. Royal Caribbean Cruises. Mr. Hamilton. Good morning, Your Honor. Good morning, Your Honors. Last but not least, my name is Jerry Hamilton. I represent Royal Caribbean, the appellant in this case. And this case implicates federal admiralty choice of law principles. It arises from a wrongful death claim based on a cruise that took place in Alaska. The decedent in this case, a gentleman by the name of Mr. Polchowski, who was a Wisconsin domicile and resident, who purchased a cruise while in Wisconsin and entered into a contract while in Wisconsin, fell ill on board Royal Caribbean's cruise ship that was sailing in Alaska. He asserted in a trial that he was improperly treated by the medical staff, and unfortunately Mr. Polchowski passed away in a hospital in Alaska when he was taken off of the cruise ship. Now, the estate brought this claim against Royal Caribbean, and the estate was opened in Wisconsin, and it was brought against Royal Caribbean pursuant to Royal Caribbean's forum selection clause, which required all lawsuits to be brought in the state of Florida. Now, the parties all agree, and this is common ground, that general maritime law applies to the claim. No question, no dispute. The parties also agree that general maritime law only allows for pecuniary losses only. Nothing else. However, there is one exception. If a death occurs in a territorial waters of the United States, then general maritime law allows a party to supplement those damages with the damages from a state. And the question before this court is which state should supplement the damages in this general maritime law wrongful death case. And the court really only had three states, although only two were argued below, where the death occurred in Alaska, where Mr. Polchowski was the defendant, domiciled in Wisconsin, or where the case was pending in Florida. Now, for over 50 years, the choice of law analysis has been set forth by the Supreme Court of the United States in a case called Luritzen v. Larson. And in that particular case, Luritzen v. Larson, it sets forth how this court should view the choice of law analysis and what factors the court should use for the choice of law analysis. And it sets forth seven factors. And in the Luritzen case, it was an international dispute between the United States and Denmark in terms of which law should apply, U.S. law or Denmark law. And it laid out factors such as where was the wrongful act, what was the law of the flag of the vessel, what was the allegiance of the domicile of the injured party, what was the allegiance of the shipowner, where was the place of contract, what's a forum inaccessible, and what the law of the forum is. Mr. Hamilton, if we could turn to this case. Here, the Wisconsin wrongful death statute doesn't just simply limit damages in certain scenarios. It only applies to deaths caused within the state. Doesn't that make it a very different animal for Luritzen purposes? No, Judge Jordan, and let me explain why. There's a wrongful death statute that limits damages to the state and it has a cap. But Wisconsin law also says that a Wisconsin citizen can recover damages for an out-of-state death if they apply the state law of where the death occurred. And in this instance, the death occurred in Alaska. And in fact, never once did the appellees ask for the application of Alaska's law. They relied solely upon the application of Florida law. And so what happened in this case is that in that two-part test, right, first the court has to do an analysis to determine which state has a significant relationship to the incident. And I think this is where the district court may have erred, and you get to look at this case, DeNoble. But when you look at which state has a significant relationship, you should follow the 3rd Circuit opinion in Calhoun because the 11th Circuit really hasn't come and ruled and made a pronouncement in this area of law. And so you're actually looking at rendering a new opinion that will guide the parties in the admiralty jurisdiction. And you should look at the 3rd Circuit. And in the 3rd Circuit case, that was a case where a young woman died in Puerto Rico. She brought the claim in Pennsylvania, and the 3rd Circuit looked and said, all right, let's look at the significant relationship test. Where was the domicile of the decedent? Where was the contract entered? Where was the estate opened? And they looked at those three factors, and they found that Pennsylvania law was, in fact, had a significant relationship to the claim. And then they looked at the dominant interest and said, which state had the dominant interest in its law being applied? And, of course, I think it goes without question that the interest in this case should lie with Wisconsin because the fact of the matter is that Wisconsin has the strongest interest in making sure that its own citizens receive compensatory damages. Doesn't Florida also have an interest in making sure that companies that require claims to be litigated here also properly compensate those who are injured? Not according to this court's decision in PIMBA.  What PIMBA said, essentially, is that the interest that Florida has in compensatory damages is that Florida's interest is to ensure that its domicilaries are not subjected to excessive awards or verdicts, and that was Florida's interest in compensatory damages. That's one of the interests, not the sole interest. It is certainly one of the interests, and it was a primary interest that was identified in PIMBA when it comes to compensatory damages. And keep in mind, Judge Jordan, with respect to the fact that cases are filed here, of course the cases are filed pursuant to the contract that brings it here. Yes, but that's your contract. That's true. And if you look at the cases that talk about the law of the forum when it comes to the admiralty choice of law analysis, they clearly state that the law of the forum is not significant in the factors that you need to weigh when you are looking at the admiralty choice of law analysis. And they go through why that is. And so if we were to accept what it is that the district court was saying and what the appellees are advancing, then in every case, in every case, Florida would have that interest, right? Because you'd be in a Florida court by way of a contract. And then the argument would be, well, since Florida has an interest, Florida law applies. But the analysis doesn't end there. No, I agree with you. The analysis doesn't end there. But here, for example, the law of the flag doesn't help you in any way. The place of the contract doesn't really help you in any way. The inaccessibility of a foreign forum doesn't really help you in any way. And yet the law of the forum Florida, the base of the ship owner's operations, and the ship owner's allegiance are all factors that at least potentially argue for Florida having an interest, right? Very good question. I'm concerned. Two minutes, counsel. Two minutes, please. In part, yes and no. Because if you look at Calhoun, they reach the same conclusion that you do, which is you don't consider the law of the flag, you don't consider the allegiance of the ship owner, you don't consider the inaccessibility of the forum because those were factors that were primarily based upon an international dispute. And, in fact, if you look at Calhoun and his court follows Calhoun, you would disregard those factors. The place of the contract, Judge Jordan, is absolutely relevant because the place of the contract was in Wisconsin. The tickets were delivered and purchased in Wisconsin. And, in fact, when you look at the Scott v. Eastern case, that was one of the most significant factors they considered in which law applied. Counsel, to your argument about contract formation, that you argued that the contract was formed in Wisconsin, where did Royal Caribbean send the passenger ticket contract from? That is not in the record, Your Honor. So I don't know where it came from. It could have come from multiple spots because there are call centers around that could deliver the ticket, but that fact is not in the record. The only fact that is in the record is that it was purchased in Wisconsin and delivered in Wisconsin. Did the district court make any findings of fact as to where the contract was formed? No, and that's part of our issue here because the district court didn't even consider the factors of Lauritsen v. Larson in the order below. It talked about the factors, but it did not, and you'll see it in our brief, it did not consider the significant relationship factors to this particular claim. So when you looked at the district court order, it didn't go through those factors that Judge Jordan just listed. It just didn't, and that was part of the error of what the district court did not do. Mr. Hamilton, this is Jill Pryor. In the Pimba case, the court seemed to apply, rather than the Lauritsen factors, the factors listed in the restatement second of conflicts of law. How do those two tests interact, and which one should we apply here? Excellent question. In the Pimba case, it was not a maritime law case, and so the Pimba case used the restatement 145, which both parties agreed, and the district court agreed, is not the right analysis. The right analysis is the Lauritsen analysis. The sole reason I cited Pimba was because in Pimba, the Eleventh Circuit stated what the interest of Florida is when it relates to compensatory damages only. And so that's what Pimba stands for. But the court should not use Pimba or the Pimba test to analyze that. Counsel, you do cite the Pimba, but in that case, the court found that Florida's interest in ensuring that a compensatory damages award against its own domiciliary defendants is not excessive would be furthered by the application of Florida law, even though Florida's law was more generous than Columbia's. So how do you reconcile what the court said and what it did? Right. So what the court did in Pimba was recognize two things. One, that Florida has its domiciliaries, and then also it looked at whether or not, since Columbia had a much more restrictive damage scheme, what it ultimately did is say that, you know what, because we cannot discern exactly what Columbia's damage scheme is, and it says that directly in the case, we're going to apply the Florida law. And keep in mind, Judge, and I think that was Judge Branch, but keep in mind, Judge Branch, that in Pimba they were analyzing multiple factors. If you do not apply in a maritime law case, if you look at the Pimba rule, right, and I think this is where Pimba is a little bit, you should not be guided by Pimba. If you look at the restatement 145, and you look at the nine factors that they list, they're not the nine factors that should be binding in a maritime law case. And what can be said in this case is that there is no question that Wisconsin had an interest. And what the district court said is Wisconsin, she could not find an interest at all in Wisconsin. And the district judge stated specifically that, indeed, if she found an interest, if she found that Wisconsin had an interest, then Wisconsin law would most likely apply. And so there's no question that when you look at this case, that because Sirkulchowski, the decedent, was from Wisconsin, the estate was opened in Wisconsin, the contract was in Wisconsin, that Wisconsin has a primary interest in making sure that its citizens receive compensatory damages and that its citizens don't receive also awards that other Wisconsin citizens would not be able to get. And so, again, I've asked this court, and I know I'm past my time, but I'll rest on this fact. I would ask this court to look at the well-reasoned opinions in Calhoun, out of the Third Circuit, and in Scott, out of the Third Circuit, because I believe those cases are the true entrenched general maritime law cases on how to handle the choice of law decision in maritime cases. Thank you. All right. Thank you, Mr. Hamilton. Okay, Mr. Parrish. Thank you, Your Honor. Good morning. May it please the court. Philip Parrish on behalf of the appellee, Laura Goodloe, as personal representative of the estate of her deceased father, Richard Puchowski. Lawritson, like all conflict of laws tests, focuses on which of the proposed states has the most significant relationship to the incident, and thus the dominant interest in having that state's law applied. Now, I'm surprised to hear Royal Caribbean continue to argue that Judge Altanaga did not engage in or apply Lawritson below. She clearly did. We set forth the ruling as our statement of the case and facts in our brief at pages 3 to 7, primarily pages 3 to 5, and in her opinion, which is found at 418F sub 3, 11, 12, starting on page 11, 28, she first goes through and lists all the factors, noting, of course, that the factors are not an exhaustive list and that the test is not a mechanical one. She then goes forth and sets forth what it is that Royal Caribbean argues, as they have today, are the Wisconsin factors that go forth. And the two factors that Royal Caribbean has always relied upon to suggest that Wisconsin law should apply actually, upon analysis, collapse into one and then into zero. I'll start with the place of the contract. The contract, and, of course, it was issued from Florida. Where else would it have been issued from? It's on Royal Caribbean International letterhead. That's their primary place of business. It's not sent to the Puchowskis in Wisconsin. It's sent to a travel agent in Connecticut. And, although in their reply brief they say that Mr. Puchowski's widow testified unequivocally that it was delivered to her there, it's not exactly accurate. At page 35 of her testimony, that's on March 6 of 2019, the question is asked, and the actual tickets that were delivered, were delivered to you in Wisconsin? She initially answers correct. Then she says, well, actually, if I could, I just thought of something. I went through a travel agent, and the agent, Oded Patat, he was the one who arranged the trip for us. And then they follow up, okay, you contacted the travel agent. They made the arrangements. Correct. So the record establishes that the place of contract was between Connecticut and Florida, but Luritsen tells us that in a maritime tort case, the place of contract is entitled to little or no effect. So you take that leg of RCCL's argument out from under them. The other leg of their argument is that Mr. Puchowski and Mrs. Puchowski were, at the time of his death, residents and domiciles of Wisconsin. But Wisconsin doesn't care about that. Wisconsin says we only have a cause of action for wrongful deaths that are caused in Wisconsin. Not only that, the Supreme Court in Wisconsin said, however, if some other state's law applies, we'll let you apply that. So in this case, that other state is Florida. Now, it is true that in that case, the other state was the place of the injury, but there was no other state that was alleged to be involved. Here, Royal Caribbean never argued for Alaska, and we know from Luritsen where the incident occurred in Cuba, that if neither of the parties raise the place of injury or some other state, then the court doesn't consider it. The court also said that in Piamba. Now, when you take the fact that three of the seven Luritsen factors typically don't apply, and Royal Caribbean argued this below, and the district court acknowledged it, don't apply in domestic or national versus international cases, what you have left of Luritsen, there's not a blade of daylight between that and the Piamba-Cortez analysis because you've taken out the two, the law of the flag, four, the allegiance of the shipowner, and six, the inaccessibility of the foreign forum. We've already talked about five, place of contract. That's irrelevant here because it's Connecticut, and it's a tort case. So we only have the domicile of the injured, one factor, which in the second part of the analysis becomes of no consequence because Wisconsin's law has an anomaly. So we're left with the law of the forum, which in this case is a significant factor, and the defendant's principal place of business, not just a place where it does business, but a principal place of business. I noted that Royal Caribbean started out citing Piamba-Cortez and then withdrew from it because in a case that, again, once you are dealing with a domestic maritime case, Piamba is more or less right on point with the same kinds of considerations and factors, which is what Judge Altanaga applied. You have the fact that there is a definite interest in Florida because there's a defendant that is domiciled in Florida here, Royal Caribbean. Meanwhile, there's no Wisconsin domicile defendant. Counsel, this is Lisa Branch. How does the application of Florida law here further Florida's interest in ensuring a compensatory damage award against its own domiciliary defendant is not excessive? Because it's applied. And, in fact, Judge Altanaga considered the motion for remittiture under Florida's remittiture statute. She had presided over the case for a year and a half and presided over the trial. She knew all of the evidence, and believe me, the evidence in this case was clear. She ruled that, applying Florida's law, that Royal Caribbean was not entitled to remittiture. And you know what? Royal Caribbean obviously agrees because Royal Caribbean did not appeal that ruling. It could have appealed that ruling if it thought that the result was too high, but it did not. So it's irrelevant that after the fact, it looks – Royal Caribbean wants to complain about the size of the verdict. The trial court looked at that, applied Florida law. That's all that the conflict of laws analysis undertakes. This conflict of laws analysis doesn't say, hey, we want to make sure that if you apply this Florida's law, that you don't get more than you would have gotten under Wisconsin or Pennsylvania law. And getting to Pennsylvania law, they want to rely on Calhoun. Well, if this case – if the Puchowskis had been from Pennsylvania, well, then maybe the outcome here would have been different. Judge Altanaga did not – this is a one-off case. Judge Altanaga did not rule that simply because Royal Caribbean has a Florida forum selection clause, and because it's based here that every case involving conflict of laws in a Yamaha situation is going to require the application of Florida law. She looked at the only two states that were presented to her. And under Piamba-Cortez, which again is not in conflict with Lauritzen once you strip away the international aspects of Lauritzen, which the defendant asked the trial court to do, and she did, Florida nonetheless retains an interest in ensuring that a compensatory damages award against its own domiciliary defendants is not excessive. That decision should be made and can be made prior to trial. In Tucker v. Ferron, the defendant moved for summary judgment on that point and got the case certified for interlocutory appeals. So that decision was made prior to finding out what the jury might do. Royal Caribbean could have done that in this case. They didn't. So now they're Monday morning quarterbacking, but it doesn't do anything. It doesn't affect the conflict of laws analysis, which is applying the state's interest. If they wanted to complain about what they think is the misapplication of Florida's law, then they should have appealed the denial of their motion for remitter. They did not do that. So unless there are further questions, and I also point out because they do make a run at Tucker v. Ferron in their brief, even though they didn't really rely on it for good reasons today, the only state whose law was in play in Tucker was Alabama, and because Alabama's law provided no pain and suffering type damages, then of course there was no ability to supplement with that law. They did point out in footnote 13, this court did point out in footnote 13, that there had been a claim for punitive damages under Alabama's law, that there had been a summary judgment entered, but that issue was not before the court. So the court in Tucker was not dealing with a conflict of laws case. Tucker cannot be read, as Royal Caribbean did in its brief, to suggest that it's controlling here or even particularly applicable. The sole issue in this case is whether Wisconsin or Florida law has a dominant interest. Wisconsin has zero interest as a result of an anomaly in its law. Florida has significant interest, both in terms of two of the Ritzen factors, and the district court did in fact entertain a Ritzen analysis. I guess Royal Caribbean wanted the district court to give a final score, Florida 2, Wisconsin 1, or something like that. But she went through the analysis, and the controlling factor of those analyses was that Florida has an interest, Wisconsin does not, and therefore Florida law applies. If there are no further questions, I would ask the court to affirm. All right, thank you very much. Mr. Hamilton, you've got some rebuttal time. Thank you, your honors. I want to address just two quick points that were raised by Mr. Parrish, which is this. If you look at the order below that was issued by Judge Altanaga, what happened was that she merged the significant relationship to the claim test with the dominant interest test. Why was that merger a problem, and why shouldn't this court do the same thing that the lower court did? When she did it, she found specifically that Wisconsin had zero interest, nothing. That it had no interest in how compensatory awards were dealt with for its citizens. And that was clearly an error, and not an error that this court should advance. If we look at the factors, and this is where I disagree with Mr. Parrish on Larson versus Larson. If you look at the factors, and you look at the Calhoun case, which says take out the inapplicable factors, get rid of the law, the flag, the allegiance of the ship owner, inaccessibility of the foreign forum. You look at the factors, and the most important factor is what is the domicile of the injured party, and what's the place of the contract. And Mr. Parrish cited in the record 178, page 35 of the record. And when you look at page 35, what the testimony is, is that they purchased the tickets for the entire family while in Wisconsin. The purchase of the tickets were actually delivered and delivered in Wisconsin. And there is no evidence that the tickets were delivered in Connecticut, or that there was no Connecticut. Who bought the tickets? The tickets were, the testimony is that, and you and Dick, you being the wife, and Dick being the decedent, actually purchased the tickets for the whole family, correct? Correct. And the purchase of the tickets you did while you were residing in Wisconsin, correct? Correct. And the actual tickets were delivered to you in Wisconsin, correct? And then she said, well, actually, I just thought of something. I went through a travel agent, and that's where she stops. Well, what do Royal Caribbean's records say about whether or not a travel agent purchased the tickets for them? I don't think that's in the record, Judge Jordan. Isn't that a problem for you? No, it's not a problem for me, because the place of the contract, even if you go through a travel agent, and the law is very, very clear on this, even if you go through a travel agent, you, the principal, are still the person purchasing the ticket, and you, the principal, are entering into the contract in that domicile state, not in the travel agent's state, but in the domicile state. You are a contracting party, even if you go through a travel agent. So if they had called and called a travel agent in India, and India somehow got the ticket and then sent it to Wisconsin, the contract wouldn't be formed in India. It would be formed in Wisconsin. Then the delivery, if you're right about that, Mr. Hamilton, that means that the place of delivery of the ticket is irrelevant. No, the place of delivery of the ticket is irrelevant in the sense of you look to where the contract was formed, right? The ultimate contract was formed in Wisconsin. So, yes, if one sends a ticket to India and India then sends a ticket to Wisconsin, then, yes, the fact that it went to India first and then Wisconsin second would be irrelevant. If I, well, hold on one second. This is interesting me now. So if I place a telephone order with Royal Caribbean for tickets, Yes. and my offer is to pay Royal Caribbean set rates for a cruise, why isn't the contract created when Royal Caribbean in Miami accepts my offer? The contract could be created in that instance in the sense that you're saying that if you call, you offer, Royal Caribbean accepts, why is the offer not created in Miami? Yes. Under that fact scenario, it may be, one could probably argue that, but that's not the testimony and that's not the evidence in this particular case. That's not what happened. And we have to go off what happened in this particular case. Because this is a weird transaction. It just doesn't happen the way that normal transactions occur? No, no, no. What I'm saying to you is that in this case, it didn't happen that way. That's not what the testimony is. Okay. And by the way, Judge Jordan, I mean, we talk about the fact that a place of contract is significant, right? But again, if you look at the cases, right, and you look at, for instance, the Hurd case that we cite, right, they say that's in a domestic court action. What you look on, the two most significant factors is the place of the wrongful act and the domicile of the injured party, right? And I'm not receiving from the place of the contract because the record is clear as to where that took place. But I want to clarify the last point, which is this. What does Wisconsin law allow? Wisconsin law allows a Wisconsin citizen to sue using the law of another state where that injury occurred. It's a lex loci delecti law, right? And the place the injury occurred in this case was in Alaska. That's where everything took place. And the plaintiff made an election not to follow Wisconsin law in that sense and ask for the application of Alaskan law. That was a plaintiff's election. The plaintiff then said, we will rely upon the fact that a court hopefully will say that Florida has a dominant interest in having its law applied to Wisconsin citizens, even though Florida's interest, as noted by Judge Branch, is to protect the domicilaries from excessive awards in this particular instance. And so the plaintiff's failure to follow Wisconsin law solely meant that general maritime law applies. And remember, the policy behind general maritime law is that pecuniary damages only. That's the recoverable damage. It's an exception to general maritime law to apply a state law. And if you're going to apply a state law, you should apply the state law that is relevant and that binds the citizens of that particular state so that you should not get into an analysis that every time there's a lawsuit brought in the state of Florida, the state of Florida has this dominant interest and so therefore the state of Florida's law should apply. That should not be the ruling in this case. And if that were the ruling, it would contradict the ruling in Calhoun. It would contradict the ruling in Scott, which set forth the well-entrenched and established general maritime law. And with that, if there are no further questions, I would just rely upon the rest of the brief. All right. Thank you very much, Mr. Hamilton. And thank you all. That constitutes the end of our oral argument panel this week. We thank you all very much for your participation. And court is in recess.